## A98A0915. ROBERTS v. THE STATE.
### (503 SE2d 614)

BLACKBURN, Judge.

Aldene Roberts appeals his conviction for child molestation, raising several enumerations of error. For the reasons set forth below, we affirm.

1. In his first enumeration of error, Roberts contends that the evidence was insufficient to support the verdict against him. We disagree.

"On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Roberts] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. . . . The standard for reviewing [an appeal based on insufficiency of the evidence] is whether under the rule of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense." (Punctuation omitted.) *Lester v. State*, 226 Ga. App. 373, 376 (2) (487 SE2d 25) (1997).

The 14-year-old victim in this case, K. T., testified that Roberts drove her to a piece of property in Emanuel County, instructed her to get in the backseat of the car, and put his penis in her vagina. After intercourse, Roberts instructed K. T. to wipe herself off with white napkins he provided, and Roberts wiped himself off as well. Roberts then placed the soiled tissues into a plastic bag and hid them behind a brush pile at the scene of the crime. K. T. testified that Roberts had sexual intercourse with her on multiple times prior to this incident, including oral and anal sex.

Betty Colston, a counselor at K. T.'s school; Alton Spells, a worker for the Department of Family & Children Services; Richard Peacock, a police detective; and Dr. Curt Holmes, a clinical psychologist, corroborated K. T.'s description of events. Several weeks after the incident, Peacock accompanied K. T. to the scene of the crime, where he found a plastic bag containing soiled napkins as K. T. described. These napkins matched the napkins used at a pre-kindergarten school where Roberts worked as a custodian. Although the napkins, when tested, showed no evidence of semen, a crime lab

forensic serologist testified that exposure to the elements could have negated the possibility of detecting any fluid on them. In addition, the backseat from Roberts' car was removed, and it tested positive for Roberts' semen. Based on these findings, there was ample evidence to support Roberts' conviction for molestation. Although Roberts points out that he presented witnesses who testified as to his good character and innocence, "it is the function of the jury, not the appellate court, to resolve conflicts in the testimony and determine the credibility of the witnesses." (Punctuation omitted.) *Lester*, supra at 378 (4).

2. In his second enumeration, Roberts contends that the jury's verdict was strongly and decidedly against the weight of the evidence. "Our law vests in the trial judge alone the discretion to grant a new trial because the verdict might be decidedly and strongly against the weight of the evidence, and this court has no such power. Based upon the evidence discussed above, we do not find that the trial court abused its discretion." (Citation omitted.) *Wilson v. State*, 211 Ga. App. 791, 792 (1) (440 SE2d 534) (1994).

3. In his third enumeration, Roberts contends that the court erred by refusing to allow him to question the victim about her past sexual conduct. We disagree.

"Absent a showing of relevance, evidence of a child's past sexual history, including acts committed by persons other than the accused, is inadmissable. Moreover, evidence of a prior molestation or previous sexual activity on the part of the victim is not relevant in a child molestation case to show either the victim's reputation for nonchastity or her preoccupation with sex." (Citations and punctuation omitted.) *Burris v. State*, 204 Ga. App. 806, 809-810 (2) (420 SE2d 582) (1992). There are exceptions to this rule, however, as "[t]he fact that evidence may be inadmissible for one purpose does not warrant its exclusion when it is relevant and admissible for another purpose." (Punctuation omitted.) Id. at 810. For example in *Burris*, supra, it was determined that the defendant should have been allowed to present evidence of a prior claim of molestation by the victim "[i]n light of the fact that there was some evidence in this case that the victim may have had a strong motive to fabricate her accusation against defendant . . ., that the victim had first falsely accused one of her uncles of 'bad touching' her so that she would not be forced to leave her grandmother, and that the victim did not initially accuse defendant of molesting her." Id.

At trial, although Roberts attempted to introduce evidence of K. T.'s prior sexual history, he gave no valid reason indicating its relevance when objected to by the State. Roberts stated that the questions he wished to ask would be used to show that the victim was familiar with sexual terminology and that the victim was not "inno-

cent." Clearly, such grounds for admission of a molestation victim's prior sexual activity are improper. See *Chastain v. State*, 257 Ga. 54 (354 SE2d 421) (1987). Moreover, although Roberts now attempts to argue that the questions should have been allowed because K. T. had a strong motive to fabricate her accusation, there was insufficient evidence shown at trial to trigger the exception to the general rule of exclusion set out in *Burris*. As such, we find no error.

4. In his fourth enumeration, Roberts contends that the trial court erred by allowing the State to ask the victim repetitive questions on redirect examination. Again, we disagree.

"The courts have traditionally accorded a great deal of latitude in the examination of young or timid or otherwise disadvantaged witnesses. *Hayslip v. State*, 154 Ga. App. 835 (270 SE2d 61) (1980); *Hanson v. State*, 86 Ga. App. 313 (71 SE2d 720) (1952). In *Hanson*, this court specifically noted that the nature of the offense was sexual and held that in such a case, when the victim was of tender years, the trial court did not abuse its discretion in permitting repetitive and even leading questions. We find the same considerations to obtain here, and therefore find [Roberts'] enumeration without merit." (Punctuation omitted.) *Stine v. State*, 199 Ga. App. 898, 900 (3) (406 SE2d 292) (1991). In this case, moreover, only a single repetitive question was asked to which Roberts objected. We find no error.

5. In his fifth enumeration of error, Roberts contends that the State was allowed to question Alton Spells as an expert witness even though he was not so qualified, thereby giving undue weight to his testimony. We disagree.

As an initial matter, we point out that Roberts has failed to identify in his brief a single question or response given by Spells that was objectionable. Instead, Roberts complains in a general sense that Spells was improperly treated as an expert. Spells, an employee of DFACS, testified that he had no special training in detecting molestation, but that his job was to assess the risks to a child in his or her environment. Spells further testified that he attended some seminars regarding child molestation and investigative techniques. Spells then answered several questions about the general information he learned at such seminars, and he opined that there was no standard description of how a molester would look.

"Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor." OCGA § 24-9-65. We note that Roberts neither made a motion to strike this testimony, nor did he ask for curative instructions. Furthermore, "the status of the witness as lay or expert would go, not to admissibility, but credibility." *McLelland v. State*, 203 Ga. App. 93, 95 (6) (416 SE2d 340) (1992). Accordingly, we find no error.

6. In his sixth enumeration of error, Roberts contends that the trial court improperly admitted the backseat of Roberts' car and, concomitantly, the results of tests for semen on this backseat because the chain of custody was broken. Roberts argues that potential tampering was shown by the fact that the backseat had dirt on it when it arrived in the courtroom. Again, we disagree.

"In proving chain of custody, the [S]tate is not required to show that the substance was guarded each minute it is in one's custody, and in the absence of a showing to the contrary, the chain is not thereby broken. In the absence of evidence of tampering with the substance the chain of custody has not been shown to be broken. When there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to its weight." (Citations and punctuation omitted.) *Williams v. State*, 153 Ga. App. 421, 422 (3) (265 SE2d 341) (1980). As only speculation of tampering was provided by Roberts, the backseat was properly admitted. Moreover, "[t]he item was not fungible but a distinct physical object and no custodial proof was required for admission of it." *Stubbs v. State*, 201 Ga. App. 546, 548 (4) (b) (411 SE2d 525) (1991).

7. In his seventh enumeration of error, Roberts contends that the trial court improperly redacted a portion of a taped interview of K. T. in which she admitted to having sex with someone other than Roberts prior to his act of molestation. Roberts bases his contention on OCGA § 24-3-38 which provides: "When an admission is given in evidence by one party, it shall be the right of the other party to have the whole admission and all the conversation connected therewith admitted into evidence." However, OCGA § 24-3-38 does not require irrelevant material to be admitted into evidence. As such, information about the victim's past sexual experiences was not shown to be relevant by Roberts, and the trial court did not err by redacting such material from the taped interview of K. T. See *Stancil v. State*, 196 Ga. App. 530 (396 SE2d 299) (1990). Furthermore, Roberts' argument that the tape was unduly repetitive must also be rejected. See Division 4, supra.

*Judgment affirmed. McMurray, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 3, 1998.

*Kathy S. Palmer*, for appellant.
*Richard A. Malone, District Attorney, Lance J. Hamilton, Assistant District Attorney*, for appellee.